Bruce LAPE, Appellant,

v.

STATE of Texas, Appellee.

No. 14–92–01183–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 3, 1994.

Discretionary Review Refused
Feb. 26, 1995.

**952**

Stanley G. Schneider, Houston, for appellant.

Scott A. Durfee, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

**OPINION**

J. CURTISS BROWN, Chief Justice.

Bruce Lape, appellant, was charged under a two count felony indictment with aggravated sexual assault of a child. A jury found him guilty on both counts. After appellant pled true to the two enhancement paragraphs, the trial court assessed punishment at thirty years confinement on each count in the Texas Department of Criminal Justice, Institutional Division. The sentences were ordered to run concurrently. Appellant brings eleven points of error in this appeal

from the judgment. We reverse and remand for a new trial.

Appellant and Felicia Lape were married on December 17, 1981. At the time of the marriage, Felicia Lape's natural daughter, Elizabeth Arellano [1] (Arellano), was approximately three and a half years old. The couple separated in 1987 or 1988. After the separation, Arellano, appellant's stepdaughter, visited him on weekends. The visits took place at the townhome of Rita Lape, appellant's mother. Appellant and his son, Jason Lape, had resided at the townhome since appellant and Felicia Lape separated. During these visits, Arellano would share a bedroom with appellant or her brother Jason.

Arellano claimed that appellant began to molest her during these weekend visits and assaulted her thirty to forty times over the next year and a half. She was approximately ten years old when the assaults began. Appellant contended at trial that the allegations were manufactured by Arellano and her mother. Appellant's theory at trial was that Arellano and Felicia Lape made up the allegations of sexual assault so that Felicia Lape could regain custody of Jason Lape, the natural son of appellant and Felicia Lape. Appellant had been awarded temporary custody of Jason after the couple separated.

The last assault allegedly occurred in June of 1990. In August, Arellano told Christina Rangel, the daughter of Felicia Lape's boyfriend, that appellant had raped her; however, she told Christina to keep it a secret and she did. In May of 1991, Arellano told her mother's boyfriend, Jose Rangel, about the abuse. Approximately a week after Arellano made her outcry to Jose, Felicia Lape took Arellano to Texas Children's Hospital. At the hospital, Arellano was given a gynecological examine by Dr. Clifford Mishaw. Dr. Mishaw testified that he observed a subtle irregularity in Arellano's genitalia. He stated that the irregularity could have been caused by previous trauma to the tissue consistent with Arellano's allegations of sexual abuse.

1. Elizabeth's last name is spelled two different ways throughout the record in this case: "Arella-

no" and "Arreano." We have chosen to use the spelling contained in the indictment.

On May 25, 1991, Felicia Lape contacted the Houston Police Department. On June 7, 1991, Arellano, accompanied by her mother, went to the police station to give a statement about the assaults. On June 10, 1991, Jason Lape gave a videotaped statement to the police. He stated that he had twice witnessed appellant assaulting Arellano.

The jury found appellant guilty on both counts of the indictment. The court sentenced appellant to thirty years on each count. The sentences were ordered to run concurrently. Appellant brings this appeal.

In points of error one and two, appellant contends the trial court erred in limiting his right to cross-examine witnesses and that the *cumulative effect* of these rulings caused his right to confront witnesses and to present a defense to be abrogated, thereby denying him the right to a fair trial in violation of the United States and Texas Constitutions.

In these points of error, appellant complains about the trial court's alleged improper exclusion of cross-examination in the following six areas:

1. Whether Jason Lape was coached in his answers prior to giving his statement to the police.

2. Whether Arellano made other allegations of sexual abuse against other members of her family or appellant's family.

3. Whether Arellano and her mother lied to the police in a previous prosecution of appellant for injury to a child.

4. What Arellano's propensity for telling the truth was.

5. What Jason Lape's propensity for telling the truth was.

6. Whether Arellano made threats to do whatever it took to gain custody of Jason Lape.

We find that appellant has waived any complaint under points of error one and two. First, an allegation that the cumulative effect of two or more errors by the trial court

denied appellant a fair trial is not a proper ground of error and presents nothing for review. *Hollis v. State,* 509 S.W.2d 372, 375 (Tex.Crim.App.1974); *Christopher v. State,* 819 S.W.2d 173, 178 (Tex.App.—Tyler 1991, pet. ref'd). Thus, points of error one and two are overruled on this basis.

Second, Texas Rule of Appellate Procedure 74(f) states, in pertinent part:

A brief of the argument may present separately or grouped the points relied upon for reversal. The argument shall include: (1) a fair, condensed statement of the facts pertinent to such points, **with reference to the pages in the record where the same may be found;** and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue.

Tex.R.App.P. 74(f). (emphasis added)

Appellant does not include even a single record citation in his argument under points of error one and two. He does not identify where in the record he attempted to elicit the testimony he claims the trial court disallowed. Appellant does not point to any place in the record where the trial court denied him the right to cross-examination in the six areas complained of; in other words, he fails to point this court to that place in the record where he received a *ruling from the trial court* on his complaint. Appellant must cite us to the specific portion of the record where the objection occurs. *Id.* The statement of facts in this case consists of over nine hundred pages. We have no duty to search the record to find reversible error. *See Green v. State,* 682 S.W.2d 271, 292 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Nothing is preserved for review if the appellant does not direct the court to the proper place in the record where we may find the complained of error. *Cook v. State,* 611 S.W.2d 83, 87 (Tex.Crim.App. [Panel Op.] 1981). Because appellant did not provide this court with any record citations, points of error one and two can also be overruled on

this basis.[2]

In his third and fourth points of error, appellant contends the trial court erred in sustaining the State's objection to appellant's cross-examination of Officer Mike Martin. The questions concerned allegations allegedly made by Arellano against other male members of her family. Appellant claims the trial court's action violated his rights under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution.

■ Appellant has failed to separately analyze or argue his state and federal grounds contained in points of error three and four. This failure allows a court to overrule the constitutional challenges as multifarious. *Murphy v. State*, 864 S.W.2d 70, 72 (Tex. App.—Tyler 1992, pet. ref'd). Merely citing Article I, Section 10 of the Texas Constitution is not sufficient. *See Murphy*, 864 S.W.2d at 72. Because appellant has not provided separate argument or analysis on his constitutional claims, we will not review each constitutional challenge independently. *See id.*

Outside the presence of the jury, Officer Mike Martin of the Houston Police Department testified about additional sexual abuse allegations made by Felicia Lape during an interview with Officer Martin. Felicia Lape accused her brother, Armando Cantania, and appellant's brother, Terrence Lape, of sexually abusing Arellano. In support of the

introduction of this testimony appellant's counsel stated:

> I would offer it as a prior inconsistent statement of Mrs. Lape. Mrs. Lape when she was on the witness stand today and I asked her about this conversation with Mr. Martin, she said she did not accuse anybody else of sexual misconduct, that she simply talked about some other things and, in fact, she said in one situation there was touching on the chest but she never made a charge of sexual abuse against anyone. The officer has just testified that Mrs. Lape told him that she considered Armando's touching of the breast of Elizabeth to be sexual abuse. Mrs. Lape denied on the stand today that she had ever said that to him and she's denied her second statement regarding Terrence. So I would offer his testimony as prior inconsistent statement of that witness, Mrs. Lape.

■ The trial court refused appellant's request to present this cross-examination before the jury. At trial, appellant's sole theory for the admission of this testimony was that it was a prior inconsistent statement of Felicia Lape and as such, it was admissible to impeach her credibility. On appeal, however, appellant argues that the testimony was admissible to impeach the credibility of the complainant, Elizabeth Arellano. The ground for admission was never presented to the trial court; therefore the court was never given an opportunity to rule on the question of whether the testimony was admissible to

---

**2.** Also, we note that appellant's argument under points one and two combines both federal and state constitutional grounds. The argument does not provide a substantive analysis or argument on each separate ground. By combining more than one contention in his argument, an appellant risks rejection on the ground that he has presented nothing for review. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App.1990). When attorneys brief constitutional questions, they should carefully separate federal and state issues into separate grounds and provide a substantive analysis on each ground. *McCambridge v. State*, 712 S.W.2d 499, 501–02 n. 9 (Tex.Crim. App.1986). If counsel does not sufficiently distinguish state and federal constitutional grounds, the reviewing court may overrule the grounds as multifarious. *Heitman v. State*, 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App.1991); *DeBlanc v.*

*State*, 799 S.W.2d 701, 706 (Tex.Crim.App.1990); *McCambridge*, 712 S.W.2d at 501–02 n. 9. Here, appellant's argument does not distinguish his state and federal constitutional contentions. He does not provide an independent substantive analysis or argument on each separate ground. Because the argument does not sufficiently distinguish between the federal and state constitutional ground, these points are multifarious and could be overruled on that ground. *Heitman*, 815 S.W.2d at 690–91 n. 23; *McCambridge*, 712 S.W.2d at 501–02 n. 9. However, courts do not generally overrule both challenges; they simply refuse to review them independently. *See Murphy v. State*, 864 S.W.2d 70, 72 (Tex.App.—Tyler 1992, pet. ref'd).

impeach Arellano's testimony. Thus, because appellant's objection at trial does not comport with his complaint on appeal, error was not preserved. *Fuller v. State*, 827 S.W.2d 919, 928 (Tex.Crim.App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App.1986); *Mayfield v. State*, 828 S.W.2d 568, 570 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *see* Tex.R.App.P. 52(a).

While an appellant should be given great latitude in cross-examining witnesses in order to reveal possible bias, prejudice, or self-interest, the burden of showing the relevance of particular evidence to the issue of bias or prejudice rests on the proponent. *Chambers v. State*, 866 S.W.2d 9, 26–27 (Tex.Crim.App.1993) (citing *Janecka v. State*, 739 S.W.2d 813, 830 (Tex.Crim.App. 1987); *Keegan v. State*, 681 S.W.2d 806, 811 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). Moreover, the scope of cross-examination for the showing of bias or prejudice rests on the sound discretion of the trial court. *Id.* The trial court's determination is not reversible unless the appellant shows a clear abuse of discretion. *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

In this case, even if appellant had properly preserved his complaint for appeal, we could not say that the trial court abused its discretion in disallowing the testimony of Officer Martin. Even if taken as true, it only proves that Felicia Lape, not the complainant, made allegations against other men. Nothing in Officer Martin's testimony establishes that Arellano made any false accusations or discredits her in any way. In fact, Officer Martin testified, when questioned by the State, that he had never even spoken with Arellano concerning any other incidents of abuse. Appellant's third and fourth points of error are overruled.

In point of error five, appellant avers that the trial court erred in sustaining the State's objection to questions propounded by appellant to Arellano concerning allegations of sexual abuse allegedly made by her against other men. Appellant alleges no constitutional violations under point of error five.

During appellant's case in chief, he recalled Arellano to the stand and attempted to ask her about accusations of molestation she had allegedly made against two other men. The State objected and appellant responded that the testimony was admissible because it was relevant to the issue of Arellano's credibility. When the trial court sustained the State's objection, appellant made an offer of proof. In the offer, Arellano was questioned about her allegations of sexual abuse against Terrence Lape and Armando Cantania. Arellano testified that she had been molested by the two men. However, there is nothing in the record to establish that these accusations were false. Thus, the cases cited by appellant in support of his claim that the trial court abused its discretion in refusing to allow the testimony before the jury are inapposite.

In *Thomas v. State*, 669 S.W.2d 420, 421 (Tex.App.—Houston [1st Dist.] 194, pet. ref'd), the appellant was convicted of aggravated rape of a child. On appeal, the appellant complained that the trial court erred in excluding testimony concerning the complainant's prior allegations of sexual assaults by strangers. *Id.* Appellant attempted to introduce such evidence through the complainant and in support of the proffer he developed a bill of exceptions in which the complainant admitted that at least one of her prior accusations was false. *Id.* at 423. This was confirmed by the complainant's mother. *Id.* The court of appeals held that the trial court abused its discretion in excluding the evidence because it was relevant to the complainant's credibility.

Unlike the situation in *Thomas*, the complainant in this case never admitted that her allegations against the other men were false. Her testimony in the bill of exception was quite the opposite. She testified that she

had been sexually abused by Terrence Lape and Armando Cantania. Further, no other witness testified that these allegations were false. This testimony does not show that Arellano lied. It does not discredit her credibility. At most, it shows that the child was assaulted by two other men besides appellant. Thus, the trial court's determination that the evidence was irrelevant and inadmissible was not an abuse of discretion.

Appellant also cites *Gross v. State*, 61 Tex. Crim. 176, 135 S.W. 373 (1911). The Court of Criminal Appeals reversed appellant's incest conviction because the accused was not allowed to present evidence of other accusations made by the complainant against other men. However, the rationale for the court's decision rested on the fact that a statement made by the complainant was introduced into evidence and became "interwoven with the trial of the case." In the statement, the complainant alleged that her three uncles had been having intercourse with her. When the complainant took the stand to testify, she denied making the statement. The appellant tried to introduce evidence from other witnesses to show that the complainant had made the statement. The trial court refused to allow appellant to introduce the evidence.

The court did not discuss the initial introduction of the statement; however, it held that once the statement got into the case, the appellant "had the right to probe it for what it was worth." Thus, the only proposition that *Gross* stands for is that once the door is opened on a particular matter, the defendant is entitled to delve into it. In this case, the door was never opened. Arellano never testified before the jury that she had been assaulted by other men. This issue was only raised by the defense and never became "interwoven with the trial of the case." Thus, *Gross* does not support appellant's contention that the trial court abused its discretion in refusing the proffered testimony.

We find the case of *Hughes v. State*, 850 S.W.2d 260 (Tex.App.—Fort Worth 1993, pet. ref'd), directly on point. In that case, Hughes was convicted of aggravated sexual assault of a child. On appeal, Hughes argued that the trial court erred in sustaining the State's objections to the admissions of evidence pertaining to the complainant's allegations of sexual assault by persons other than Hughes. *Id.* at 262. The court of appeals stated that Hughes attempted to introduce this evidence in an attempt to impeach the complainant's credibility. *Id.* The court held that "such impeachment evidence would clearly have been admissible had the record contained any evidence that the other allegations were false." *Id.* (citing *Rushton v. State*, 695 S.W.2d 591, 594 (Tex.App.—Corpus Christi 1985, no pet.); *Polvado v. State*, 689 S.W.2d 945, 950 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd); *Thomas v. State*, 669 S.W.2d 420, 423 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). However, the court held, when there is no evidence that the complainant made false accusations, any evidence concerning the accusations is inadmissible. *Hughes*, 850 S.W.2d at 262–63. The court stated that Hughes apparently wanted the jury to hear the evidence so that it could infer that the complainant "cried wolf." *Id.* at 263. Without establishing the falsity of the prior allegations, the excluded evidence did not establish a motive for the complainant to lie about her accusations against Hughes. *Id.* Thus, the court held that the evidence was properly excluded.

We also find *Prevo v. State*, 778 S.W.2d 520 (Tex.App.—Corpus Christi 1989, pet. ref'd), instructive. Between the hours of 12:30 a.m. and 1:00 a.m. on January 13, 1987, the complainant, Denise Cannon–Chatam, was awakened by the ringing of her doorbell. *Id.* at 522. She opened the door and the appellant, dressed in full uniform and carrying a badge, identified himself as a deputy. *Id.* Appellant entered the house and told the complainant he had a warrant for her arrest. *Id.* The complainant began to cry and appellant stated that perhaps they could work something out. *Id.* He told Chatam that he would give her a number to call to take care of the problem so she walked to the bedroom to get a pen. *Id.* After writing down the number, Chatam thanked the appellant then

walked to the front door to let the appellant out. *Id.* Appellant closed the door and asked if he was going to be "compensated for his efforts." Appellant suggested they have sexual intercourse. *Id.* Chatam tried to talk him out of it, but the appellant forced her to manually stimulate him. *Id.* Before leaving, he told Chatam that they were "even" and that he would "get her" if she reported the incident. *Id.*

Chatam reported the incident and appellant was ultimately convicted of the misdemeanor offense of official oppression. *Id.* at 521. On appeal, the appellant argued that the trial court erred in failing to permit him to impeach Chatam's credibility by introducing evidence that she previously falsely accused another person of sexual assault. *Id.* at 524. Appellant wished to elicit in his cross-examination of Chatam, evidence that she had previously claimed to have been assaulted three to four times by another assailant in 1986. *Id.* He wished to present evidence that a subsequent investigation revealed no evidence of rape. *Id.* The appellate court held the evidence was inadmissible and stated:

> Although a defendant is allowed a broad range in contesting the credibility of the witness, we believe the evidence was properly refused. That there was no physical evidence of a prior rape does not mean that the rape did not occur, nor does it mean that the complainant lied and falsely accused another.

*Id.*

Like *Hughes* and *Prevo*, there is nothing in this case to indicate that Arellano lied and falsely accused others of sexual assault. There is nothing in the record to indicate that the other assaults alleged by Arellano did not occur. From the record before us it is just as likely that the other assaults claimed by Arellano did occur. The trial court did not abuse its discretion in refusing appellant's evidence. Appellant's fifth point of error is overruled.

In points of error six and seven, appellant complains that the trial court erred in: (1)

sustaining the State's objection to appellant's proffered evidence that the complainant and her mother had made a false criminal complaint against the appellant in the past; and (2) sustaining the State's objection to the testimony of Gaynelle Jones regarding the details of the false criminal charges made by the complainant and her mother against appellant. We agree.

During his case in chief, appellant called Felicia Lape to the stand. On direct examination, appellant's counsel asked Felicia Lape "if in the last ten years [she] had been convicted of a felony or a misdemeanor of moral turpitude." Felicia Lape admitted that she had been convicted, pursuant to a plea of guilty, of making a false report in 1986. When the appellant attempted to solicit the factual details behind the conviction, the trial court sustained the State's objections based on relevancy and TEX.R.CRIM. EVID. 608. The trial court also refused appellant's request to call Gaynelle Jones, a former assistance district attorney, to testify about a motion to dismiss filed by the district attorney's office in 1986.

The record reflects that in 1986, Felicia Lape filed a complaint against appellant alleging the felony offense of injury to a child. In the complaint, it was alleged that the appellant struck Elizabeth Arellano, the same child who is the complainant in this case. On May 29, 1986, the State, through assistant district attorney Gaynelle Jones, filed a motion to dismiss the charges against appellant. The motion, signed by Gaynelle Jones, states that the case against the appellant was being dismissed because the mother of the alleged victim, Felicia Lape, and the alleged victim, Elizabeth Arellano, admitted that appellant did not hit Arellano. Rather, the motion states that Felicia Lape was the one who struck Arellano.

 The State argued at trial that the evidence was inadmissible based on TEX. R.CRIM.EVID. 608(b). The rule states:

> Specific instances of the conduct of a witness, for the purpose of attacking or sup-

porting his credibility, **other than conviction of crime as provided in Rule 609,** may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

TEX.R.CRIM.EVID. 608(b). (emphasis added)

It is well established that in a criminal case, the credibility of a witness can be attacked by showing that the witness has been convicted of either a felony or a misdemeanor involving moral turpitude. *Trippell v. State,* 535 S.W.2d 178, 180 (Tex.Crim.App. 1976); TEX.R.CRIM.EVID. 609(a). The offense of making a false report is a misdemeanor. TEX.PENAL CODE ANN. § 37.08 (Vernon 1989).[3] Lying to a police officer or an officer of the court involves moral turpitude, regardless of whether it is done for personal gain, because it involves dishonesty. *See Robertson v. State,* 685 S.W.2d 488, 492 (Tex.App.—Fort Worth 1985, no writ). "There can be no question that a crime involving false statement and dishonesty is relevant to the credibility of a witness." *Id.* Therefore, Felicia Lape's prior misdemeanor conviction for making a false report was admissible under TEX.R.CRIM.EVID. 609(a).

While appellant was allowed to ask questions sufficient to have Felicia Lape admit that she had been convicted of making a false report, he was not allowed to ask Felicia Lape about the specifics behind the conviction nor was he allowed to introduce extrinsic evidence, through Gaynelle Jones, for that purpose. The State argues, on appeal, that although the fact that a witness has been previously convicted of a crime may be introduced, the details of the offense are inadmissible.

The general rule in Texas is that even though a prior conviction may be admissible, the details of that conviction are not. *Mays v. State,* 726 S.W.2d 937, 953 (Tex.Crim.App.1986); *Murphy v. State,* 587 S.W.2d 718, 722 (Tex.Crim.App.1979);

*Fuentes v. State,* 832 S.W.2d 635, 639 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). However, a defendant must be allowed, within certain limits, the freedom to expose a particular witness' possible biases and prejudices. *Richardson v. State,* 744 S.W.2d 65, 79 (Tex.Crim.App.1987). In the instance case, appellant's counsel was not permitted to sufficiently establish the bias or motive of the witness. The entire defense rested on appellant's claim that Felicia Lape induced her daughter, Arellano, to fabricate the charges against him so that she might regain custody of Jason Lape. The fact that Felicia Lape had previously, through the same child, brought false child abuse charges against the appellant was extremely relevant. Without the details behind Felicia Lape's prior conviction, the jury was not sufficiently informed of the lengths gone to by Felicia Lape and the complainant to achieve the goal of regaining custody of Jason. The appellant was unable to sufficiently show the jury the ill feelings and bias of Felicia Lape. The jury did not hear how Felicia Lape had once before exerted her influence over Arellano and induced Arellano into making false allegations against the appellant.

While the general rule is a good one, in this case it prevented the appellant from presented evidence crucial to his defense. His defense in this case and the details behind Felicia Lape's conviction in 1986 are too similar to be ignored and the jury was entitled to hear the evidence. We hold that in this case, the trial court abused its discretion in refusing to allow appellant to present evidence of some of the details concerning Felicia Lape's prior conviction. Appellant's sixth and seventh points of error are sustained.

In his eighth point of error, appellant alleges that the trial court erred in sustaining the State's objection to appellant's proffered testimony regarding the complainant's character for truthfulness. During its case in chief, the defense called appellant's

---

**3.** The crime for which Felicia Lape was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Thus, our citation to the penal code is to the code in effect at the time her crime was committed.

mother, Rita Lape, to the stand. On direct examination, the following transpired between Rita Lape and counsel for appellant:

Q Over the years as Elizabeth was growing up from the time she was two or three until the time she was about twelve, did you have the opportunity to form an opinion about whether Elizabeth Arreano was a truthful child?

THE COURT: That is a yes or no question, ma'am.

A I don't understand the question.

Q Did you ever have instances where you could observe her in situations where you could form an opinion of whether she was a truthful child or nontruthful child?

A She was just like, when she was little she was just like any kid, you know.

Q What do you mean by "any kid"? We're talking about truthfulness.

A No, she wasn't truthful all the time.

Q By that you mean that is kind of typical of all little kids?

A Right, right.

Q In what kind of situations would Elizabeth not be truthful?

MS. REISNER: Object, your Honor. That is not proper.

THE COURT: Sustained.

At this point, counsel for appellant began to ask Rita Lape about specific instances in which Arellano had allegedly been untruthful. The trial court, upon objection by the State, refused to let appellant present this testimony. To preserve error, appellant made a bill of exception in which Rita Lape testified about several instances in which she claimed she caught Jason Lape and Elizabeth Arellano lying.[4]

On appeal, appellant contends the trial court abused its discretion in limiting his examination of Rita Lape because such evidence was admissible pursuant to TEX. R.CRIM.EVID. 608. Under TEX.R.CRIM.EVID. 608(a), the credibility of a witness, in this case Elizabeth Arellano, may be attacked or supported by evidence in the form of opinion or reputation. However, such evidence may refer only to the witness' character for truthfulness or untruthfulness. Id. Specific instances of the conduct of a witness are not admissible for the purpose of attacking the credibility of the witness unless it comports with TEX.R.CRIM.EVID. 609. TEX.R.CRIM. EVID. 608(b).

Here, Rita Lape was allowed to testify that Arellano was not always truthful. This was proper under TEX.R.CRIM.EVID. 608(a). However, the trial court correctly refused appellant's request to delve into specific instances of conduct because the instances elicited on the bill of exception did not meet the requirements of TEX.R.CRIM.EVID. 609. Thus, the trial court did not abuse its discretion in limiting appellant's examination of Rita Lape. Appellant's eighth point of error is overruled.

■ Under point of error number nine, appellant complains the trial court erred in sustaining the State's objection to the introduction of the video interview of Jason Lape. Appellant states the tape was relevant to the issue of whether Jason Lape had been coached prior to his interview with Officer Martin.

Appellant argues that the tape should have been admitted as a prior inconsistent statement. During trial, Jason denied being coached prior to giving his statement to the police. Appellant contends that the video contains statements by Jason that he had talked about the allegations with Arellano the night before the interview. Appellant claims this evidence should have been admitted so that the jury could judge the credibility of the witness.

The video tape is not part of the record on appeal. The record reflects that appellant's

4. She stated that Jason lied about starting fires in her townhome. She said Arellano had lied about making "900" calls from the townhome.

counsel failed to offer the tape for the bill of exception. Rather, appellant's counsel stated:

> The trial court could transcribe Officer Martin's question to Jason and Jason's answer but I would offer to impeach first Jason to show that Jason lied when he stated he had not been coached by Elizabeth.

■ Unfortunately, appellant's counsel did not follow through with the suggested question and answer format, nor did he introduce the tape into evidence. Further, while appellant claimed that the tape would show that Jason went over his statement with Arellano, the State disputed this and stated that there was no inconsistency with regard to the testimony and that there was no mention of coaching on the tape. Without the tape, it is impossible for this court to determine whether the tape would have actually impeached Jason Lape. The burden is on the appellant, or the party seeking review, to provide a sufficient record on appeal to show error requiring reversal. *Murphy v. State*, 864 S.W.2d 70, 72 (Tex.App.—Tyler 1992, pet. ref'd); TEX.R.APP.P. 50(d). *See also Sterns v. State*, 862 S.W.2d 687, 691 (Tex.App.—Tyler 1993, no writ) (holding that where defendant claimed on appeal that portions of tape recording were unintelligible, defendant had responsibility to provide court with tape itself). Because appellant did not provide the court with the tape or a transcription in a bill of exception, his ninth point of error is overruled.

■ In point of error ten, appellant contends that the trial court erred in sustaining the State's objection to testimony relating to threats made by Felicia Lape, the complainant's mother. Felicia Lape had allegedly threatened to do whatever she had to do in order to regain custody of Jason Lape.

Appellant attempted to elicit testimony from three witnesses to show Felicia Lape's bias or motive in testifying. Outside the presence of the jury, Stella Dickerson, Carla Brown, and Rita Lape presented evidence of Felicia Lape's resolve to get custody of Jason and punish the appellant. Dickerson, appellant's aunt and employer, testified that Felicia had told her, after temporary custody of Jason was awarded to appellant, that "she would do whatever it took to get Jason back." The "threat" was made, according to Dickerson, in a "hateful" tone of voice. This threat was repeated on two occasions. Brown, appellant's cousin and co-worker, testified that she too had heard Felicia make threats. She testified that Felicia stated that "she was going to hurt Bruce and no matter what it took she was going to get Jason." Felicia Lape allegedly made this statement just before appellant was arrested.

Lastly, Rita Lape, appellant's mother, testified that Felicia Lape made threatening statements to her regarding appellant's custody of Jason on several occasions. She stated that the first time Felicia made any threats regarding the custody of Jason Lape was while leaving court after the first divorce hearing. According to Rita Lape, Felicia said that "she would get Jason." Felicia Lape allegedly called Rita Lape on two other occasions voicing the same threats. In one of those conversations, Felicia Lape allegedly stated that there were ways to "get him," and that she knew how to do it. Rita Lape also testified that Arellano told her that Felicia Lape made her make accusations against the appellant and that they were not true.

The State objected to the proffered testimony on the grounds that it was hearsay. We disagree. TEX.R.CRIM.EVID. 803 provides instances in which certain statements are not excluded by the hearsay rule. One of the instances is a statement of the declarant's then existing state of mind and emotions. TEX.R.CRIM.EVID. 803(3). Such statements are admissible if they show motive. *Id.* In this case, the statements made by Felicia Lape were not hearsay because they concerned her state of mind and emotions over the appellant and the custody battle. The statements clearly show she had a motive to lie about the appellant. The jury should have been allowed to hear the testimony because these threats showed Felicia Lape's

intent and motive to cause Arellano to fabricate the accusations against the appellant. The exclusions of this evidence coupled with the trial court's exclusion of the details behind Felicia Lape's false report conviction prevented the appellant from adequately presenting his defense: that Felicia Lape urged Arellano to fabricate charges against the appellant so that Felicia Lape could regain custody of Jason Lape.

■ The cases are legion that hold that a defendant should be allowed great latitude in showing the ill feeling bias, motive, or animus of a witness to falsely testify. *McKee v. State*, 855 S.W.2d 89 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Moody v. State*, 830 S.W.2d 698 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Paley v. State*, 811 S.W.2d 226 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Motives which operate on the mind of a witness are never regarded as immaterial or collateral matters. *Koehler v. State*, 679 S.W.2d 6 (Tex.Crim.App.1984). And though a defendant's right to expose a witness' motive or bias is not free from all limitations, *Russell v. State*, 798 S.W.2d 632 (Tex.App.—Fort Worth 1990, no writ), we hold that in this case, the trial court abused its discretion in refusing to allow the appellant to show the jury just how biased Felicia Lape was, and the extremes that she might go to in order to obtain custody of Jason.

■ The State argues that even if there was error, it is not reversible under TEX. R.APP.P. 81(b) because the testimony appellant wanted to elicit came in elsewhere. While this proposition is generally true, we hold that it is not applicable in this case because the testimony of the three witnesses showed the extent of Felicia Lape's bias. The fact that Arellano admitted that her mother told her she would do anything to get

Jason back does not have the force or impact that the testimony from the three additional witnesses would have. Additionally, these three witnesses were more explicit concerning the details and the timing of the alleged threats. Therefore, we hold that the trial court abused its discretion in disallowing the testimony offered by appellant and sustain appellant's tenth point of error.

■ In his eleventh point of error, appellant complains that the trial court erred in excluding Rita Lape's testimony concerning her description of how sound carries in her townhome, the site of the alleged sexual assaults. Appellant, in describing and arguing his point of error, uses the term "experiment." During the examination of Rita Lape, appellant did inquire whether she had conducted an "experiment" as to how sound carried in her home. The State objected "to any experiment." At that point, counsel for appellant left the "experiment" line of questioning and began asking Rita Lape questions about her own personal knowledge of how sound carried in her home and whether you could hear voices in one room when you were in another. This had nothing at all to do with experiments; however, the trial court still refused to let Rita Lape testify in this regard. The bill of exception presented by appellant does not ask Rita Lape about any "experiments" she conducted in her house; rather the questions are based solely on her knowledge of her own home. Further, the thrust of appellant's argument is that the testimony was admissible under TEX. R.CRIM.EVID. 701 entitled "Opinion Testimony by Lay Witnesses." We will review appellant's claim on that basis.[5]

Appellant attempted to ask Rita Lape about the manner in which sound carried in her home. Rita Lape stated, in the bill of exception, that a person in the appellant's

---

5. The State argues that appellant did not lay a proper predicate for the introduction of any experiment. First, we have determined that a liberal construction of the record and appellant's point of error shows that he was not trying to introduce evidence of an experiment. Further, even if he had been, he was prevented by the trial court from even attempting to lay a proper predicate. Every time appellant asked Rita Lape about sound carrying in her home, her familiarity with sound in her home, etc., the State objected on grounds of relevancy or speculation. These objections were sustained by the trial court.

bedroom, speaking in a normal tone of voice, could be heard in the bedroom occupied, at the time of the alleged assault, by her brother George. Further, the voice could be heard in her own bedroom. She also stated that she always slept with her bedroom door open at night. Lastly, she stated that if someone were yelling or screaming that you could hear not just the voice, but the actual words screamed or yelled would be heard all over the house, even downstairs.

Arellano testified that each time she was assaulted, thirty to forty times according to her own testimony, she screamed for help. The testimony offered by appellant through Rita Lape was offered to impeach Arellano's credibility.

TEX.R.CRIM.EVID. 701 states that a lay witness may give testimony in the form of an opinion or inference as long as it is based on the perception of the witness and is helpful to the jury in understanding the testimony or determining a fact in issue. We hold that the trial court abused its discretion in refusing to allow Rita Lape to testify about how sound carried in her home. Her testimony was based on her own perception of sound in her home and her testimony would have helped the jury in determining whether Arellano's testimony was credible, a very important issue in this case.

■ Further, we hold that the error was not harmless under TEX.R.APP.P. 81(b). While it is true that Rita Lape was allowed to testify that she never heard Arellano scream, this is not in and of itself sufficient, as the State claims, to rebut Arellano's claim that she screamed each time she was assaulted. Testifying that she never heard Arellano scream is not the same as testifying, based on her personal knowledge of how sound carries in her home, that if Arellano had screamed she would have heard it. Rita Lape's testimony about how sound carried in her home was important to show the unlikelihood that Arellano screamed for help.

The State also claims the error was harmless because the testimony at trial showed that Jason Lape was in the same room during some of the assaults, but did not awaken and that this was sufficient to impeach Arellano's credibility. We disagree. We conclude that the trial court's improper exclusion of Rita Lape's testimony was not harmless error. See TEX.R.APP.P. 81(b). We sustain appellant's eleventh point of error.

Because of our holdings in points of error six, seven, ten, and eleven, we reverse the trial court's judgment and remand the case for a new trial.