Opinion issued July 7, 2005












     





In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-00514-CR; 
01-04-00515-CR; and 01-04-00516-CR




CHARLES DENNIS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause Nos. 910051, 910052 and 910053




O P I N I O N

          A jury convicted Charles Dennis of three counts of sexual assault with a minor
and, after he stipulated to the indictment’s allegations in the enhancement paragraph,
assessed punishment at twenty years’ confinement. On appeal, Dennis contends the
trial court erred (1) in admitting testimony by M.W. of an extraneous offense; (2) in
admitting the expert opinions of a psychotherapist; and (3) in refusing to order the
production of evidence regarding, and allowing testimony concerning, the State’s
decision to dismiss its prosecution of M.W.’s sexual assault. We hold that the trial
court did not abuse its discretion in admitting the extraneous offense testimony or in
admitting the expert opinions of the psychotherapist. We further hold that the trial
court did not abuse its discretion in refusing to allow evidence of the State’s dismissal
of its prosecution of M.W.’s complaint, nor in refusing to order the production of the
State’s memorandum concerning its dismissal. We therefore affirm the judgment.
Facts and Background 
A. Facts of the Sexual Assault 
          Charles Dennis was charged with repeatedly sexually assaulting his daughter
F.S. Dennis and F.S.’s mother divorced when F.S. was thirteen years old. At the
time of the divorce, Dennis moved into a two-room garage apartment with his
girlfriend, Rotasha Brown. Brown had two children who also lived in the apartment. 
F.S. and her sister visited Dennis at the apartment every other weekend. The
apartment’s living room contained two couches and a set of bunk-beds. When F.S.
visited Dennis, she slept on one of the living room couches. 
          F.S. testified that on June 9, 2001, when she was fourteen years old, she visited
Dennis for the weekend. That evening, Brown’s children and F.S.’s sister slept on
the bunk-beds. F.S. slept on one of the living room couches. Dennis fell asleep on
the other living room couch. Brown went into the bedroom to sleep. During the
night, Dennis came over to F.S. and pulled her to the floor. Dennis told F.S. that he
was “going to teach her about sex.” Dennis then removed F.S.’s shorts and
underwear, got on top of her and put his penis inside of her vagina. F.S. cried. After
it was over, Dennis went into the bedroom to go to sleep. F.S. went into the bathroom
and eventually returned to the living room couch where she fell asleep. F.S. did not
tell her mother or Brown what had happened because she did not think anyone would
believe her and because she was scared. 
          F.S. testified that on June 23, 2001, Dennis repeated the assault. F.S. was on
one of the couches watching television. Brown’s children and F.S.’s sister were
asleep on the bunk-beds, and Brown was asleep in the bedroom. Dennis came over
to F.S.’s couch, pulled her to the floor and told her that he wanted to teach her about
sex. Dennis told F.S. that she should not tell anyone what he was doing because he
would have to go away for a long time and F.S. would have to tell her sister what had
happened. Dennis then put his penis inside her vagina. F.S. did not tell anyone what
had happened. 
          In July 2001, F.S. again visited Dennis. This time, Brown, Brown’s children
and F.S.’s sister fell asleep in the living room while watching television. F.S. left the
couch to go to the bathroom, which was in the bedroom. Dennis followed her and
shut the door behind him. Dennis pushed F.S. down on the bed, got on top of her,
and put his penis in her vagina. Afterwards, F.S. returned to the living room. F.S. did
not tell anyone about the assault. 
          F.S. testified that she was assaulted during another weekend visit in July 2001. 
Brown was asleep in the bedroom, and Brown’s children and F.S.’s sister were asleep
in the bunk beds. While F.S. was watching television on one of the living room
couches, Dennis came out of the bedroom and pulled F.S. to the floor. Dennis put his
penis inside her vagina. F.S. cried. F.S. did not tell anyone what had happened.
          During F.S.’s next weekend visit, Brown, her children, and F.S.’s sister fell
asleep in the bedroom while watching television. While F.S. was watching television
on one of the living room couches, Dennis came out of the bedroom and sat on the
other living room couch. Dennis then came over to F.S., pulled her to the floor and
sexually assaulted her. 
          In the fall of 2001, Dennis came to F.S.’s house but she refused to open the
door for him. F.S.’s mother discovered this, at which time F.S. told her mother’s
boyfriend and her mother about the sexual assaults. A doctor examined F.S. and
determined that her hymen was not intact—a condition consistent with vaginal
penetration. F.S. and her mother reported the assault to the police. The Children’s
Assessment Center interviewed F.S. Later, an officer from the Houston Police
Department interviewed F.S., and the State filed charges against Dennis.
B. Facts of the Extraneous Offense
          During the trial, the State introduced testimony from M.W., Brown’s teenage
cousin. M.W. testified that in June 2001, she saw her cousin at a barbeque and was
invited to spend the night at her cousin’s apartment. At this time, Brown’s children
were visiting other relatives and Dennis’s children were not visiting him. After
visiting with her cousin and watching television, M.W. went to sleep on the couch;
Dennis and Brown slept in the bedroom. Early the next morning, after Brown had
gone to work, M.W. woke up with Dennis on top of her. M.W. cried as Dennis
moved her legs apart, held her arms down and moved her underwear to the side. 
Dennis then put his penis inside her vagina. Dennis later returned to the bedroom. 
M.W. was scared and did not immediately tell anyone about the assault. M.W.
eventually told her mother, who took her to the police station. 
          Here, before the State introduced M.W.’s testimony, the trial court gave a
limiting instruction—that M.W.’s testimony could be used only to rebut the defensive
theory of fabrication. The court instructed the jury as follows:
You are instructed that if there is any evidence before you in this
case regarding the defendant’s committing an alleged offense or
offenses other than the offense alleged against him in the indictment in
this case, you cannot consider such evidence for any purpose unless you
find and believe beyond a reasonable doubt that the defendant
committed such other offense or offenses, if any, and even then you may
only consider the same to rebut the defensive theory of fabrication, if
any, in connection with this offense, if any, alleged against him in the
indictment and for no other purpose.Extraneous Offenses 
          In his first two issues, Dennis contends that the trial court erred in admitting
M.W.’s testimony that he sexually assaulted her because the testimony involved an
irrelevant extraneous offense. Dennis contends that the testimony is irrelevant
because (1) its sole purpose is to prove character conformity; (2) it is not similar
enough to the charged offense to be used to rebut his defensive theory; and (3) it was
impeached by allegations of fabrication and therefore may not be used to rebut his
defensive theory. Dennis also contends that M.W.’s testimony was unfairly
prejudicial. We hold that the trial court did not err because M.W.’s extraneous
offense testimony was relevant under Rule 404(b) and admissible under Rule 403.
 A. Standard of Review
          A trial court’s admission of extraneous evidence is reviewed for an abuse of
discretion. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will
affirm a trial court’s ruling that an extraneous offense has relevance apart from
proving conformity with the defendant’s character if the ruling is within the zone of
reasonable disagreement. Id. (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1990)). “When a trial court further decides not to exclude the evidence,
finding that the probative value of the evidence is not outweighed by the danger of
unfair prejudice, this decision too shall be given deference.” Id. We cannot simply
substitute our own decision for the trial court’s. Id. 
B. Relevance of the Extraneous Evidence for Rebuttal of a Defensive Theory
           Dennis initially contends that the extraneous offense testimony’s “only logical
relevance is to show [his] character trait of sexually assaulting children” and,
therefore, it should have been excluded. Rule 404(b) precludes a defendant from
being tried for his collateral crimes or for having a propensity for criminal conduct. 
Tex. R. Evid. 404 (b); Nobles v. State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). 
Extraneous offenses thus are not admissible at the guilt-innocence phase of a trial to
prove that a defendant committed the charged offense in conformity with a bad
character. Tex. R. Evid. 404(b). Extraneous offense evidence that has relevance
beyond character-conformity, however, may be admissible. Id.; Moses, 105 S.W.3d
at 626. 
          Rebuttal of a defensive theory is “one of the permissible purposes for which
relevant evidence may be admitted under Rule 404(b).” Moses, 105 S.W.3d at 626. 
In a sexual assault case, an extraneous offense may be admitted to rebut the defense
that the defendant is the innocent victim of a frame-up by the complainant or others. 
Wheeler v. State, 67 S.W.3d 879, 887–88 n.22 (Tex. Crim. App. 2002). In Wheeler,
the Texas Court of Criminal Appeals held that the trial court did not err in admitting
evidence that the defendant had previously sexually assaulted his niece. Id. at
887–89. During trial, the defendant suggested that he was the victim of a frame-up
and that the complainant had fabricated the allegations against him. Id. at 887. The
Court of Criminal Appeals held that the extraneous offense evidence contradicted the
defendant’s frame-up theory by showing the defendant’s misconduct in circumstances
in which the child making the allegations was not motivated to lie by money or
revenge, and thus the extraneous testimony was relevant. Id. at 887. 
          Here, during his opening and closing argument, Dennis argued to the jury that
F.S. fabricated the sexual assault allegations because she was angry at him for taking
away her cellular telephone and for disciplining her because of her poor grades in
school. On cross-examination, Dennis solicited testimony from witnesses that F.S.
was angry when he took her cellular telephone from her and that children may
fabricate allegations out of anger. In a hearing regarding the admissibility of the
extraneous witness testimony, Dennis explained to the trial court that his whole
defense is F.S.’s fabrication of the allegations against him “based upon her being
angry.” Thus, under Wheeler, M.W.’s testimony is relevant rebuttal evidence
showing that under similar circumstances, Dennis sexually assaulted another child.
          Dennis, however, claims his case is “legally indistinguishable” from Pavlacka
v. State, 892 S.W.2d 897 (Tex. Crim. App. 1994), in which the Texas Court of
Criminal Appeals held that the evidence of an extraneous sexual assault of a child
was inadmissible to rebut a defense that the child fabricated his testimony. In
Pavlacka, the defendant did not raise the defense that the complainant had fabricated
testimony as a result of improper influence or motive, and “the State, as proponent of
the evidence, suggested no theory of logical relevance other than character
conformity.” Id. at 901–02 (emphasis added). Here, unlike in Pavlacka, the State
introduced M.W.’s testimony to rebut Dennis’s defense that F.S. fabricated the sexual
assault allegations—a theory other than character conformity.


 Pavlacka, thus, is
distinguishable. 
C. Degree of Similarity
          Dennis next contends that M.W.’s testimony cannot be used to rebut his
defensive theory that F.S. fabricated her allegations because the sexual assaults of
M.W. and F.S. are not similar enough. In Wheeler, the Texas Court of Criminal
Appeals held that an extraneous offense may be admitted to rebut the defense that the
defendant is the innocent victim of a frame-up if the extraneous misconduct is
“similar to the charged one and an instance in which the ‘frame-up’ motive does not
apply.” 67 S.W.3d at 887 n.22 (emphasis added) (citing Boutwell v. State, 719
S.W.2d 164, 179 (Tex. Crim. App. 1985) and Johnston v. State, 418 S.W.2d 522, 527
(Tex. Crim. App. 1967)).
          We have discovered no cases specifically discussing the degree of similarity
required before an extraneous offense may be used to rebut the defense of fabrication. 
Dennis cites Owens v. State, 827 S.W.2d 911 (Tex. Crim. App. 1992), contending that
the degree of similarity is one of exacting sameness. In Owens, the State introduced
the extraneous offense evidence “on the theory that it tended to prove the criminal
‘system’ of [the defendant].” Id. at 914. The court required the extraneous offense
to be “so nearly identical in method to the charged offense as to earmark them as the
handiwork of the accused.” Id. at 914–15 (internal quotations omitted). 
          The similarity required to prove a “defendant’s system” naturally is high
because the extraneous offense evidence is being used to show the defendant’s
distinctive and idiosyncratic manner of committing the criminal acts. Id. We hold
that it does not follow that an extraneous offense admitted to rebut the defensive
theory of frame-up requires this same degree of exacting similarity between the
extraneous and charged offenses. Cf. Plante v. State, 692 S.W.2d 487, 492–93 (Tex.
Crim. App. 1985) (En banc) (holding that high degree of similarity between
extraneous and charged offense used in cases proving modus operandi not required
when purpose of proof is to show intent).
          Moreover, the facts in Wheeler do not support Dennis’s contention that the
extraneous and offense charges here must have the same high degree of similarity
required in cases in which the extraneous witness testimony is used to prove a
defendant’s system. In Wheeler, evidence of the extraneous offense was admitted
after the court found it similar to the charged offense. The similarity was not one of
exacting sameness—in both cases, the defendant reached underneath a young girl’s
outer clothing and touched her private parts while a family member was nearby. 
Wheeler, 67 S.W.3d at 886–88. Likewise, in Johnston—cited by Wheeler for the
proposition that similarity is required before extraneous offense testimony may be
admitted to rebut a defendant’s theory of frame-up—the facts of the alleged offense
and the charged offense did not have the degree of similarity required by Owens for
cases admitting extraneous offenses to prove a defendant’s system. In Johnston, the
charged offense concerned a victim who visited the defendant’s apartment several
times, during which the defendant talked the victim into “hypnotizing him with a
vibrator” and “kissing him on the stomach” to help the victim “with girls, sex and
stuff.” 418 S.W.2d at 525–26. The extraneous offense evidence admitted to rebut
the defendant’s theory of a frame-up was testimony that the defendant “played
around” with another boy in a car and asked the boy to spend the night and have
sexual relations. Id. 
           Here, both the extraneous and charged offenses involved teenage girls whom
Dennis knew; both occurred in Dennis’s apartment, on a couch, in the living room
area; both occurred in the summer of 2001; and, during both instances, Dennis did not
say much to the victim as he sexually assaulted her. We hold that the similarity
between the sexual assaults of M.W. and F.S. is at least as strong as that presented in
Wheeler and Johnston, and thus, sufficient to allow use of the extraneous offense
evidence to rebut Dennis’s theory that F.S. framed him. 
D. Alleged Fabrication by Extraneous Witness
          Dennis also contends that under Wheeler, M.W.’s testimony is not relevant
because he produced evidence that M.W. had a motive to lie. Dennis again cites to
footnote 22 in Wheeler, which states that an extraneous offense may be admitted to
rebut the defense that the defendant is the innocent victim of a frame-up if the
extraneous misconduct is “similar to the charged one and an instance in which the
‘frame-up’ motive does not apply.” 67 S.W.3d at 887 n.22 (emphasis added). 
Dennis contends that Wheeler requires an extraneous offense to be an instance in
which no motive exists for the witness to frame the defendant, and because he
presented evidence that M.W. had a motive to lie, the extraneous offense was
inadmissible. 
          Wheeler, however, notes that “the” frame-up motive with regard to the
complaining witness must not exist; not the complete absence of any frame-up motive
with respect to the extraneous witness. See id. We interpret Wheeler as requiring that
the extraneous offense be one for which the complainant’s “frame-up” motive does
not apply—not that a motive to fabricate the extraneous offense be wholly absent. 
To read Wheeler otherwise would permit a defendant to exclude any extraneous
offense evidence merely by alleging that the extraneous offense witness has some
motive—one wholly unrelated to that of the complaining witness’s—to lie.           Although it addressed the issue under Rule 403—instead of Rule 404(b)—the
Texas Court of Criminal Appeals rejected an argument similar to Dennis’s in
Montgomery v. State, 810 S.W.2d at 382 (adopted by court in opinion on rehearing
at 390 n.3). In Montgomery, the court rejected the argument that the extraneous
offense testimony had limited usefulness because its source was an ex-wife who
could not be considered an objective, un-biased, witness. Id. The court held that it
would be improper for the trial court to omit extraneous offense testimony because
the witness has a motive to lie—rather, credibility is a question for the jury to decide. 
Id. 
          Here, Dennis’s “frame-up” theory against F.S. is that she fabricated the
allegations against him because she was angry that he had disciplined her for abusing
her cellular telephone and for receiving poor grades. Dennis claims that M.W.’s
testimony is not credible because she also had a motive to lie—because she was
jealous of Brown, her cousin and Dennis’s girlfriend, and because she was afraid to
tell her mother her fear that she might be pregnant. Dennis’s allegation that M.W.
also had a motive to lie involves the evaluation of M.W.’s credibility, which Dennis
attacked during her cross-examination. Dennis’s impeachment theory that M.W. had
motives to lie—different from those F.S. allegedly had—does not preclude the
relevance of the extraneous offense. 
D. Admissibility under Rule 403 Balancing Test
          Even if evidence is relevant, and the purpose for which it is being offered is
permissible under Rule 404(b), a trial court should exclude it from evidence if the
probative value is substantially outweighed by the danger of unfair prejudice. Tex.
R. Evid. 404(b); Moses, 105 S.W.3d at 626 (citing Montgomery, 810 S.W.2d at 387). 
Courts should consider the following factors under a Rule 403 analysis: (1) the
strength of the extraneous offense evidence to make a fact or consequence more or
less probable; (2) the potential of the extraneous offense to impress the jury in some
irrational but indelible way; (3) the time during trial that the State requires to develop
evidence of the extraneous misconduct; and (4) the need by the State for the
extraneous evidence. Wheeler, 67 S.W.3d at 888.
          Here, M.W.’s testimony has similarities to F.S.’s testimony—both involved 
assaults by Dennis, in the same apartment, during the same month and year, on or
about the same couch, and to teenage girls whom he knew. The extraneous offense
evidence thus suggests that F.S.’s allegations were not the result of Dennis’s taking
away her cellular telephone. As such, this evidence is relevant to rebut Dennis’s
theory of fabrication. Second, M.W.’s testimony was not especially graphic, and the
trial judge correctly instructed the jury to consider it only for a limited purpose. 
Third, our review of the record indicates that M.W.’s direct examination was not
unduly lengthy.


 Finally, Dennis strongly contested that the sexual assault actually
occurred. The trial court reasonably could have concluded that the State
demonstrated that it needed M.W.’s testimony to counter lengthy testimony elicited
by Dennis, during both direct and cross-examinations of several witnesses, that F.S.
was angry at him for taking away her cellular telephone and thus fabricated the
allegations.
          Although M.W.’s testimony of an extraneous sexual assault carried emotional
weight and the danger of impressing the jury in an indelible way, the trial court’s
decision to admit the extraneous offense evidence is within the zone of reasonable
disagreement. We thus hold that the trial court did not abuse its discretion in
admitting M.W.’s testimony. 
Scientific Evidence
          In his third issue, Dennis contends the trial court erred in permitting Dr. Jean
Lerner, a child psychotherapist and social worker, to testify about the general
characteristics of a child victimized by sexual assault. Dennis argues that the
testimony was inadmissable under Rule 702 because Lerner “lacked the training and
experience to give such opinions and she lacked the underlying data upon which to
base her opinion.”
A. Facts Concerning Lerner’s Qualifications and Testimony
          Lerner testified that she obtained a master’s degree in social work from the
University of Houston in 1972. She became an accredited certified social worker in
1982 and obtained her advanced clinical practitioner’s certificate in 1984. She earned
a doctorate in psychotherapy in 1991 from the International University. Lerner’s
training focused on helping children, adolescents and adults work through trauma,
emotional problems, or behavioral issues. She has practiced for thirty-five years,
working primarily with abused children. She has worked with various agencies in
Houston that assist families and children. In her practice, Lerner has seen many
children. In 1999, Lerner presented a seminar to professionals on sexual abuse and
the treatment of children in play therapy. She has read extensively on the cognitive
investigation of abused children. Besides her training and experience, Lerner relied
on documentation from the American Academy of Child and Adolescent Psychiatry
and the American Academy of Pediatrics in forming her opinions. 
          Lerner testified that she personally evaluated F.S. before and after the sexual
assaults. After the assaults, F.S. had changed her dress to a provocative style. Lerner
further testified that F.S. told her that she was worried about Dennis’s spending
Christmas alone, that she was angry with Dennis for sexually assaulting her, and that
she was feeling anxious about the stress in the family. F.S. revealed feelings of
hopelessness based on an inability to deal with her anger towards her father while still
missing him. At trial, Lerner testified that F.S.’s expressed feelings and dress are
consistent with those of sexually abused children. 
B. Standard of Review
          We will not disturb a trial court’s determination of whether a witness is
qualified as an expert, absent a clear abuse of discretion. Morales v. State, 32 S.W.3d
862, 865 (Tex. Crim. App. 2000). We gauge an abuse of discretion by testing
whether the trial court acted without reference to any guiding rules or principles. 
Overall, “a trial court enjoys wide latitude in determining whether expert testimony
is admissible. Hernandez v. State, 53 S.W.3d 742, 750 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d). 
C. Admissibility of Lerner’s Testimony
          Reliability is the cornerstone of determining the admissibility of scientific
testimony—unreliable evidence will not assist a jury to understand the evidence or
accurately determine a fact in issue. State v. Medrano, 127 S.W.3d 781, 784–86
(Tex. Crim. App. 2004). “When addressing fields of study aside from the hard
sciences, such as the social sciences or fields that are based primarily upon experience
and training as opposed to scientific method, [the usual] requirement of reliability
applies but with less rigor than to the hard sciences.” Nenno v. State, 970 S.W.2d
549, 561 (Tex. Crim. App. 1998), overruled on other grounds by State v. Terrazas,
4 S.W.3d 720, 727 (Tex. Cri. App. 1999); Medrano, 127 S.W.3d at 785. When soft
sciences are at issue, the trial court should determine (1) whether the field of expertise
is a legitimate one; (2) whether the subject matter of the expert’s testimony is within
the scope of that field; and (3) whether the expert’s testimony properly relies upon
and/or utilizes the principles involved in the field. Medrano, 127 S.W.3d at 785
(citing Nenno, 970 S.W.2d at 561). 
          The Court of Criminal Appeals examined expert testimony concerning
behavioral characteristics of sexually abused children in Duckett v. State, 797 S.W.2d
906 (Tex. Crim. App. 1990), disapproved on other grounds by Cohn v. State, 849
S.W.2d 817, 819 (Tex. Crim. App. 1993). In Duckett, the court held that a qualified
social worker demonstrating expertise in the field of child sexual abuse can testify to
background patterns found in exploited children and can offer opinions of whether
the complainant’s statements demonstrate a pattern consistent with other exploited
children, but cannot offer expert opinions of the child’s truthfulness. Id. at 915–17. 
Expert testimony helps the jury understand the seemingly illogical behavior of the
child who changes her story, seems confused, and does not immediately disclose a
sexual assault. Id. at 916.
          Here, Lerner’s opinions regarding the characteristics and dynamics of sexually
abused children are based on her extensive experience working with, and learning
about, abused children. The State thus sufficiently demonstrated the reliability of
Lerner’s expert testimony. See Duckett, 797 S.W.2d at 908, 917; Hernandez, 53
S.W.3d at 751. 
          We are not persuaded by Dennis’s argument that Lerner’s opinions lacked a
sufficient basis because they were not based on her own examination. First, Lerner
personally met with F.S. on several occasions, both before and after the sexual abuse. 
Second, an expert may base her opinions on facts made known to her as well as facts
personally observed. Tex. R. Evid. 703; see also Duckett, 797 S.W.2d at 908
(certified social worker testified without personally examining child—he based expert
opinion on various witnesses’ testimony, statements in police report and child’s
videotaped interview). The trial court did not abuse its discretion in admitting
Lerner’s expert opinions into evidence. 
Evidence Concerning the Dismissal of M.W.’s Case Dennis’s last three issues concern evidence of the State’s earlier dismissal of
M.W.’s case. Before F.S. told the police that she had been sexually assaulted, the
State had investigated M.W.’s allegations of sexual assault, and brought charges
against Dennis based on them. Thereafter, Dennis obtained a recorded statement
from M.W.’s mother stating that she did not believe her daughter’s allegations. 
Shortly after Dennis gave a copy of this statement to the prosecutor, the State
dismissed its charges in connection with the sexual assault of M.W.
          At trial, Dennis introduced into evidence the recorded statement of M.W.’s
mother. M.W.’s mother testified—she admitted that she previously had stated that
she did not believe M.W., and that she thought Dennis was innocent. She explained
that she had made these statements because M.W. “did not want to go no further
because she didn’t want to hurt his family. She didn’t want his–his children to be
without a father.” M.W. also testified. She admitted that on one occasion she had
told her mother that Dennis did not do anything to her. She also admitted that her
details of how the sexual assault occurred had changed over time. 
          During the trial, Dennis asked the State to produce its file on M.W.’s case,
including the reasons why the State dismissed its charges. The trial court reviewed
the records in camera and determined that they were not discoverable. During his
cross-examination of M.W. and M.W.’s mother, Dennis inquired about the State’s
dismissal of its prosecution of M.W.’s case. The trial court sustained the State’s
objections to these inquiries. Finally, Dennis attempted to call as a witness the
assistant district attorney who dismissed the State’s prosecution of M.W.’s case. The
trial court granted the State’s motion to exclude this testimony. 
          Dennis contends the trial court erred (1) in not requiring the State to produce
its file regarding the dismissal of M.W.’s case; (2) in sustaining the State’s objections
to his cross-examination of M.W. and M.W.’s mother concerning the State’s
dismissal of the prosecution; and (3) in granting the State’s motion to exclude
testimony from the district attorney concerning the reason the State dismissed the
prosecution of M.W.’s case. 
A. Relevance
          Here, the fact that the State did not prosecute and obtain a conviction in
M.W.’s case is irrelevant. First, extraneous misconduct may be admissible evidence
even if it does not result in a conviction. See, e.g., Rankin v. State, 953 S.W.2d 740,
741 (Tex. Crim. App. 1996) (“An extraneous offense is defined as any act of
misconduct, whether resulting in prosecution or not, that is not shown in the charging
papers.” (emphasis changed)). Second, there are many possible reasons for the
State’s choice in not prosecuting a case. See Mendiola v. State, 61 S.W.3d 541, 546
(Tex. App.—San Antonio 2001, no pet.). Third, to the extent that Dennis attempts
to use the evidence as another’s opinion of M.W.’s credibility, it is improper. See
Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (stating that generally it
is improper for witness to offer direct opinion as to truthfulness of another witness).
          Dennis cites to Mendiola v. State, 21 S.W.3d 282 (Tex. Crim. App. 2000) and
Lape v. State, 893 S.W.2d 949 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d), 
in support of his contention that the dismissal of charges of an extraneous offense is 
admissible evidence. Mendiola concerns evidence admitted during the punishment
phase of a trial and the considerations of what should be admitted to determine a
defendant’s criminal record. Mendiola is inapplicable to this case because, as the
court explained, “the sentencing phase presents different issues than those
contemplated in the guilt/innocence phase” and at the sentencing phrase, policy rather
than relevancy is at issue. Id. at 285. Moreover, on remand, the Texas Court of
Appeals determined that the trial court did not abuse its discretion in refusing to
admit evidence that the charges on an extraneous offense were dismissed because
evidence of the dismissal was irrelevant. Mendiola, 61 S.W.3d at 546.
           Nor are we persuaded by Dennis’s citation to Lape. Lape holds that a prior
conviction of filing a false report is admissible because, under Rule of Evidence 609,
a witnesses’s prior convictions involving moral turpitude may be used to attack the
witnesses’s credibility. Id. at 957–58. Here, neither M.W. nor M.W.’s mother was
convicted of filing a false report. We hold that the trial court did not abuse its
discretion in ruling that evidence of the State’s dismissal of Dennis’s earlier
prosecution was not relevant.
B. Brady Violation
          Dennis contends that the State’s refusal to produce its file on M.W.’s case,
including notes explaining the dismissal of its prosecution of Dennis for the alleged
assault of M.W., violated his constitutional rights under Brady v. Maryland, 373 U.S.
83, 83 S. Ct. 1194 (1963). In Brady, the United States Supreme Court held that the
State’s suppressing material evidence favorable to the accused, upon the accused’s
request for the evidence, denies the accused due process of law under the Fourteenth
Amendment of the United States Constitution, irrespective of the State’s good or bad
faith in withholding the evidence. Id. Withheld evidence is material if there is a
reasonable probability that the proceeding’s outcome would have differed had the
evidence been disclosed. United States v. Bagley, 473 U.S. 667, 680–82, 105 S. Ct.
3375, 3383–84 (1985). 
          Dennis speculates that the undisclosed documents contain evidence that the
State “introduced trial testimony that it knew or should have known was perjured.”
The undisclosed documents consist of the recorded statement already in the
possession of Dennis and three additional pages of notes. We have reviewed these
documents and disagree. First, the undisclosed documents do not have information
in addition to that already in the possession of Dennis and that used by Dennis during
his examination of M.W. and M.W.’s mother. There is not a reasonable probability
that the production of the same-type of information would have changed the outcome
of the trial and thus, the evidence is not material. Second, contrary to Dennis’s
speculation, the notes do not contain evidence that the State introduced perjured
testimony. Third, as noted above, evidence of the dismissal was not admissible at
trial. See Lagrone v. State, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997) (stating
that State has no duty to produce evidence that would be inadmissible at trial). 
           Furthermore, our review of the undisclosed documents reveals merely that the
State acknowledged inconsistent testimony of which Dennis’s counsel already was
aware—this is not evidence that the State introduced perjured testimony. See
Weisinger v. State, 775 S.W.2d 424, 427 (Tex. App.—Houston [14th Dist.] 1989, pet.
ref’d) (citing Nix v. Whiteside, 475 U.S. 157, 191, 106 S. Ct. 988, 1007 (1986)) 
(holding that “[a] lawyer’s certainty that a change in . . . recollection is a harbinger
of intended perjury—as well as judicial review of such apparent certainty—should
be tempered by the realization that, after reflection, the most honest witness may
recall (or sincerely believes he recalls) details that he previously overlooked.”); see
also Duckett, 797 S.W.2d at 915–17 (recognizing that abused children often change
their testimony). 
Conclusion
          We conclude (1) the trial court did not abuse its discretion in admitting the
extraneous offense testimony of M.W.; (2) the trial court did not abuse its discretion
in admitting the expert opinions of the psychotherapist; (3) the trial court did not err
in excluding evidence of the State’s decision to dismiss its prosecution of Dennis for
the sexual assault of M.W.; and (4) the State did not violate Brady in refusing to
produce its notes regarding its dismissal of the prosecution of M.W.’s case. We
therefore affirm the judgment of the trial court. 
 

                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Bland.
Publish. Tex. R. App. P. 47.2(b).