TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00428-CR






Kevin Jones, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT

NO. 3031020, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Kevin Lee Jones, Sr. of aggravated assault with a deadly
weapon. See Tex. Pen. Code Ann. § 22.01(a)(1) (West 2003). The court assessed punishment at
forty years' imprisonment. In three points of error, appellant argues that the trial court erred in
failing to instruct the jury on the lesser-included offense of deadly conduct, disallowing him to
impeach the complainant with a previous conviction of failure to identify, and admitting the State's 
impeachment evidence that attacked a witness's credibility. For the reasons that follow, we affirm
the judgment of conviction.



FACTS


 The trial testimony revealed that on May 26, 2003, appellant's girlfriend, Luciana
Forcey, and her sister, Audrey Forcey, drove to appellant's house. Luciana, who is also known as
LaShawn, had recently spent several days away from appellant's house and wanted to collect some
clothing and change the locks. Although she had not received any answer when she placed a
telephone call to appellant's house, Luciana drove around the block a few times to ensure that he was
not home. She parked her car in front of the house, with the driver's side facing the curb and the
residence. She gave her cell phone to Audrey with instructions to call the police if she took too long
to return.

 Luciana knocked on the garage door leading to the house. Although she had not
expected appellant to be home, he opened the door. As she gathered clothes from the children's
bedroom, she and appellant conversed about her leaving. During this discussion, she "made clear
to him" that she wanted a separation. Appellant waved to Audrey through the bedroom window, and
Audrey waved back. Luciana exited the house with some clothing and placed it in the back seat of
the car. As she returned to the house for more clothing, she discovered that appellant had locked the
garage door leading into the house. Luciana walked to the breaker box on the side of the garage and
turned off the electricity. A few minutes later, appellant opened the door and Luciana went inside. 
Meanwhile, Audrey had moved to the driver's seat of the car and was using Luciana's telephone to
talk to a friend.

 After Luciana returned inside the house, appellant exited and began loading a shotgun
in the garage. As he approached the car, Audrey thought she saw him carrying a long black rod. 
When he was facing the car, she thought it might be a BB gun. Stopping within a step or two of the
car, with a "real angry look on his face," appellant told Audrey, "Merry Christmas, you stupid bitch"
and shot her in the arm with a .410 shotgun. Audrey testified that appellant held the shotgun "like
it was pointing in [her] face," but Audrey threw her arm up and fell back in the seat, as she told
appellant "no." Audrey "blanked out," but when she got up she saw appellant returning to the garage
and picking up more shotgun shells. She exited the car and ran to a neighbor's house across the
street. Appellant, armed with the shotgun, ran after Audrey as she screamed for help. A male
neighbor, who witnessed Audrey coming toward his house, testified that she had "a lot of blood"
running down her arm and was screaming hysterically, "He shot me, he shot me!"

 Sometime after Audrey found shelter at the neighbor's house, appellant, still armed
with the shotgun, went after Luciana. Seeing him return, Luciana slammed the door, locked it, and
ran out the back door. Appellant chased her around the backyard and, as she paused to jump over
a fence, Luciana glanced back and saw him doing something with the shotgun. She was not sure
whether he was "cocking" the shotgun when she saw him, but as she went over the fence, she heard
a shot fired.

 The same neighbor who had seen Audrey running to his house now watched Luciana
do the same. He also observed appellant across the street "scrambling to get more shells to reload
the gun." The neighbor yelled to Luciana to hurry because appellant was reloading. The neighbor's
wife, who is a certified medical assistant, was getting medical supplies from her garage when she
saw appellant approaching with the shotgun. She told appellant, "K.J., you don't want to do this." 
He yelled for her to get out of his way and that he was "going to kill LaShawn." The male neighbor
stood by his garage door and yelled to appellant, "You're not coming in my house with that gun, my
son's in this house." Appellant left their property. He started to place the shotgun in the back seat
of his car but instead he dropped the shotgun in his front yard and drove away.

 Because Luciana signed a voluntary affidavit of non-prosecution, the jury considered
only the allegation in the first count of the indictment concerning appellant's aggravated assault of
Audrey. At the conclusion of the jury trial, the trial court refused appellant's request for a charge
on deadly conduct, which appellant argued was a lesser-included offense of aggravated assault. The
court also refused to allow appellant to impeach Audrey with her misdemeanor conviction for failure
to identify. But the court admitted the State's evidence that Luciana had asked one of her neighbors
not to testify against appellant. The jury found appellant guilty of aggravated assault with a deadly
weapon.



ANALYSIS


Requested Instruction on Deadly Conduct

 Appellant's first point of error is that the court erred by refusing to instruct the jury
on a lesser-included offense. See Tex. Code Crim. Proc. art. 37.08 (West 1981). A lesser-included
offense is one that



(1) is established by proof of the same or less than all the facts required to establish
the commission of the offense charged;


(2) differs from the offense charged only in the respect that a less serious injury or
risk of injury to the same person, property, or public interest suffices to establish
its commission;


(3) differs from the offense charged only in the respect that a less culpable mental
state suffices to establish its commission; or


(4) consists of an attempt to commit the offense charged or an otherwise included
offense.


Hayward v. State, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005) (citing Tex. Code Crim. Proc. art.
37.09 (West 1981)). Specifically, appellant argues that deadly conduct is a lesser-included offense
of aggravated assault and that he was entitled to a charge of deadly conduct under "both or either"
the misdemeanor version in section 22.05(a) or the third degree felony version in section
22.05(b)(1). See Tex. Pen. Code Ann. § 22.05(a), (b)(1), (e) (West 2004-05).

 A two-prong test applies when assessing whether a charge on a lesser-included
offense should have been given. Pickens v. State, 165 S.W.3d 675, 679 (Tex Crim. App. 2005). 
The test requires that (i) the lesser-included offense be included within the proof necessary to
establish the offense charged; and (ii) some evidence exists in the record that, if the defendant is
guilty, he is guilty only of the lesser offense. Id. (citing Hampton v. State, 109 S.W.3d 437, 440
(Tex. Crim. App. 2003); Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)).

 To establish the offense of assault, the State must prove that the accused intentionally,
knowingly, or recklessly caused bodily injury to another. Tex. Pen. Code Ann. § 22.01(a). The
offense of "aggravated" assault requires proof that the accused used or exhibited a deadly weapon
during the commission of the assault. Id. § 22.02(a)(2) (West 2003).

 To establish the offense of deadly conduct, the State must prove that the accused (a)
recklessly engaged in conduct that placed another in imminent danger of serious bodily injury or
(b) knowingly discharged a firearm at or in the direction of one or more individuals. Id. § 22.05(a),
(b)(1). One who engages in deadly conduct recklessly commits a class A misdemeanor, while one
who engages in deadly conduct knowingly commits a third degree felony. Id. § 22.05(e).

 Appellant relies on Audrey's testimony that she was "not afraid" as he approached
the car and that the gun "went off" as evidence that "calls into question the intentionality of [his]
act" and entitles him to a misdemeanor charge of deadly conduct. See id. § 22.05(a), (e). He also
argues that his act of firing a gun "at or in the direction of an individual" entitled him to a felony
charge of deadly conduct. See id. § 22.05(b)(1), (e). The State contends that appellant was not
entitled to a charge of either form of deadly conduct because there was no evidence that he was
guilty only of that offense. Pickens, 165 S.W.3d at 679.

 We must evaluate appellant's argument in the context of the entire record,
considering the offense charged and the facts proven in this case. Campbell v. State, 149 S.W.3d
149, 154 (Tex. Crim. App. 2004). Based on Audrey's testimony that the gun "went off" and that
she was not afraid initially, appellant argues that his act of shooting her was not volitional. This
is not an argument supporting an instruction on a lesser-included offense; rather, it is an argument
that he was not guilty of any offense at all. See Tex. Pen. Code § 6.01(a) (West 2003). Entitlement
to a charge on a lesser-included offense depends on evidence that the defendant is not guilty of the
greater offense but is only guilty of the lesser. Pickens, 165 S.W.3d at 679. If the evidence at trial
proved that appellant never shot Audrey, he could have been guilty only of deadly conduct.

 But appellant did shoot Audrey. The trial testimony revealed that appellant loaded
the shotgun, approached Audrey with an angry look, told her "Merry Christmas, you stupid bitch,"
aimed the gun "like it was pointing in [her] face," and shot her, leaving a hole that was the size of
a "little orange" in her arm. He returned to his garage, reloaded, and chased her across the street
as he held the shotgun. Other portions of the record contain Audrey's declarations that appellant
"shot" her. Because appellant shot Audrey he could not be charged with deadly conduct under
section 22.05, even if the evidence supported his argument that he did not intend to seriously injure
her when he recklessly discharged the shotgun in her direction and placed her in imminent danger
of bodily injury. Appellant did not merely place Audrey in "imminent danger of serious bodily
injury," or "discharge a firearm in her direction," he actually caused her serious bodily injury by
shooting her. Here, the only time appellant engaged in deadly conduct was in the moments that
preceded his commission of the aggravated assault. The fact that he shot Audrey precludes an
instruction on either form of deadly conduct in section 22.05 because he could not have been guilty
of only that offense. See id.

 There is no evidence establishing deadly conduct as a valid alternative to the charged
offense of aggravated assault. See Hampton, 109 S.W.3d at 440. Because there is no evidence that
would support an acquittal on the aggravated assault charge and a conviction on a deadly conduct
charge, the trial court did not err in refusing to instruct the jury on either form of deadly conduct
under section 22.05. We overrule appellant's first point of error.



Impeachment with Conviction for Failure to Identify

 In his second point of error, appellant contends that the trial court erred in refusing
to allow him to impeach Audrey with her misdemeanor conviction for failure to identify. The trial
court has discretion to decide the admissibility of evidence and, absent an abuse of discretion, its
rulings will not be overturned. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003) (citing
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 2000)). Thus, an appellate court
should affirm the trial court's evidentiary ruling if it was within the zone of reasonable
disagreement. Id.

 Texas Rule of Evidence 609 permits the credibility of a witness to be attacked with
evidence of the witness's conviction for a felony or crime involving moral turpitude. Tex. R. Evid.
609(a). The rule allows the court to decide whether the evidence should be admitted after it
balances the probative value of the evidence against its prejudicial effect. See id. Offenses
involving "dishonesty or false statement" are crimes involving moral turpitude. Dallas County Bail
Bond Bd. v. Mason, 773 S.W.2d 586, 589 (Tex. App.--Dallas 1989, no writ).

 Appellant argues that Audrey's conviction for failure to identify was a crime of moral
turpitude that was admissible to attack her credibility. One commits the offense of failure to
identify by either (i) intentionally refusing to give one's name, residence address, or date of birth
to a peace officer who has lawfully arrested the person and requested the information or (ii) by
intentionally giving a false or fictitious name, residence address, or date of birth to a peace officer
who has lawfully arrested the person; lawfully detained the person; or requested the information
from a person that the peace officer has good cause to believe is a witness to a criminal offense. 
Tex. Pen. Code Ann. § 38.02(a)-(b) (West 2003). The offense of failure to identify by intentionally
giving a false or fictitious name to a peace officer is an offense involving moral turpitude. See Lape
v. State, 893 S.W.2d 949, 958 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd). But the offense
of failure to identify by refusing to give the requested information to a peace officer is not a crime
of moral turpitude. Additionally, neither form of failure to identify is a felony. Tex. Pen. Code
Ann. § 38.02(c)-(d).

 Outside the jury's presence, appellant's counsel presented the court with a printout
of Audrey Forcey's criminal history that appeared to show her conviction for "FAILURE TO
IDENTIFY ENH." (1)
 But nothing in the printout showed that her conviction was under section
38.02(b), which involves lying to a peace officer. See id. § 38.02(b). Appellant failed to meet his
burden of proving that Audrey's conviction for failure to identify was either a felony or a crime of
moral turpitude. Moreover, because Audrey testified that she had been convicted for misdemeanor
theft--an offense that did involve moral turpitude--any error in excluding the misdemeanor offense
of failure to identify was harmless. Thus, we conclude that the trial court did not abuse its
discretion in excluding the evidence of Audrey's conviction for failure to identify. We overrule
appellant's second point of error.



Admission of State's Evidence Attacking Witness's Credibility

 Appellant's final point of error is that the trial court should not have admitted the
statement that a State's witness attributed to Luciana regarding her request that the witness not
testify against appellant because this statement constituted improper impeachment of her credibility. 
He argues that the evidence was more prejudicial than probative under rule 403, that it violated rule
608(b) because it referenced a specific instance of Luciana's conduct, and that it lacked a proper
foundation for impeachment under rule 613(b) because Luciana was not given an opportunity to
explain or deny the circumstances or the statement. See Tex. R. Evid. 403, 608(b), 613(b).

 Specifically, appellant contends that the court should have excluded the following
witness's testimony:


Q. [by Prosecutor] Jacob, did someone ask you not to testify in this case?


A. Yes, sir.


Q. Who was that?


A. The victim's sister, the lady who was shot['s] sister.


Q. Do you know where that woman was living back on May 26,
2003?


A. I believe she was living in the house that she was shot in front
of.


Q. Okay. Now you're talking about the sister of the woman who
was shot?


A. Yes, sir.



 Appellant argues that the witness's statement about Luciana was more prejudicial
than probative. See Tex. R. Evid. 403. Rule 403 states that even if evidence is relevant, it may be
excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence. Id. The court determined that the witness's statement about
Luciana "couldn't be more relevant as to whether or not [Luciana] had a motive to fabricate." The
trial court has discretion to decide the admissibility of evidence, and we find its evidentiary ruling
was within the zone of reasonable disagreement. Moses, 105 S.W.3d at 627.

 Rule 613(b) allows impeachment of witnesses by proof of circumstances or
statements showing bias or interest on the part of the witness. Tex. R. Evid. 613(b). In Dixon v.
State, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999) (op. on reh'g), the court of criminal appeals held
that rule 608(b) is not violated when the evidence is admitted to establish a witness's bias or interest. 
Because the witness's testimony about Luciana's request was probative of her bias toward appellant,
it was admissible. The evidence was not offered to prove Luciana's general character for
truthfulness under rule 608(b), but rather, under rule 613(b), her favor toward this particular
appellant in this particular case for reasons unrelated to the merits of the case. See id.

 The State concedes that the jury received the challenged testimony before Luciana 
testified; thus, she was not confronted with her statement or allowed to explain or deny the
circumstances or the statement as required by rule 613(b). See Tex. R. Evid. 403. But the error, if
any, of admitting this statement was harmless. The jury received evidence of Luciana's bias,
independent of the challenged statement, from her own testimony:


 Q. [by Prosecutor] You're not at all happy about having to be here today, correct?


A. No, I'm not.


 Q. In fact, to be fair, the only reason you're here is because you've
been subpoenaed to attend court?


A. That is correct.


 Q. You and I have met once before and spoken about this case
very briefly, correct?


A. We spoke over the phone. I haven't met you personally, no.


 Q. Okay. And you indicated to me that you wanted nothing to do
with this trial?


A. That's correct.



Furthermore, when questioned by appellant's trial attorney, Luciana testified that she had voluntarily
executed a non-prosecution affidavit.

 Appellant asserts that he was harmed by the admission of evidence that
"impermissibl[y] impeach[ed]" Luciana's credibility because her testimony was critical to his
defense. At trial, however, appellant claimed that the most significant testimony was Audrey's:


They've put on a lot of evidence, but if you want to know the truth, this whole case
is the testimony of Audrey Forcey. She's the only one who can testify about the
shooting. No one else saw it. You have no other evidence. . . . I will submit to you
that her feelings of hatred toward this man all lead--should lead to the question of
the credibility and should create a doubt in your mind that she told the whole truth. 
Something else happened out there. . . . This is the whole case. The whole case is
the testimony of Audrey and the gun.



 Appellant claims that Luciana's testimony "contradicted some portions of [Audrey's]
testimony," but he never identifies the conflicting evidence or explains its significance. Luciana did
testify about the poor relationship between appellant and Audrey, and that, about four years before
this shooting incident, Audrey had vandalized appellant's car. But Audrey testified that she broke
the windows of appellant's car with a baseball bat, that she was placed on misdemeanor probation,
and that she was prohibited from having any contact with her sister or appellant as a result of that
behavior. Audrey further acknowledged to the jury that she violated this "no-contact" condition of
her probation on the day of the incident.

 With regard to the essential facts of appellant's offense, Luciana could not contradict
Audrey's testimony, nor could she support appellant's vague argument that "something else
happened out there" that day because Audrey was the only person who saw appellant fire the
shotgun. We conclude the trial court did not abuse its discretion in admitting the State's evidence. 
Accordingly, we overrule appellant's final point of error.



CONCLUSION


 Having overruled appellant's points of error, we affirm the judgment of conviction.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: October 20, 2005

Do Not Publish
1. While there is another entry on the printout that lists "FAIL TO IDENTIFY FUGITIVE
FROM JUSTICE," an entry beneath that offense states "PROSECUTOR ACTION: CHARGE
CHANGED/CORRECTED," suggesting that the offense may have been listed erroneously.