# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00428-CR

**Kevin Jones, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
## NO. 3031020, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kevin Lee Jones, Sr. of aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.01(a)(1) (West 2003). The court assessed punishment at forty years' imprisonment. In three points of error, appellant argues that the trial court erred in failing to instruct the jury on the lesser-included offense of deadly conduct, disallowing him to impeach the complainant with a previous conviction of failure to identify, and admitting the State's impeachment evidence that attacked a witness's credibility. For the reasons that follow, we affirm the judgment of conviction.

## FACTS

The trial testimony revealed that on May 26, 2003, appellant's girlfriend, Luciana Forcey, and her sister, Audrey Forcey, drove to appellant's house. Luciana, who is also known as

LaShawn, had recently spent several days away from appellant's house and wanted to collect some clothing and change the locks. Although she had not received any answer when she placed a telephone call to appellant's house, Luciana drove around the block a few times to ensure that he was not home. She parked her car in front of the house, with the driver's side facing the curb and the residence. She gave her cell phone to Audrey with instructions to call the police if she took too long to return.

Luciana knocked on the garage door leading to the house. Although she had not expected appellant to be home, he opened the door. As she gathered clothes from the children's bedroom, she and appellant conversed about her leaving. During this discussion, she "made clear to him" that she wanted a separation. Appellant waved to Audrey through the bedroom window, and Audrey waved back. Luciana exited the house with some clothing and placed it in the back seat of the car. As she returned to the house for more clothing, she discovered that appellant had locked the garage door leading into the house. Luciana walked to the breaker box on the side of the garage and turned off the electricity. A few minutes later, appellant opened the door and Luciana went inside. Meanwhile, Audrey had moved to the driver's seat of the car and was using Luciana's telephone to talk to a friend.

After Luciana returned inside the house, appellant exited and began loading a shotgun in the garage. As he approached the car, Audrey thought she saw him carrying a long black rod. When he was facing the car, she thought it might be a BB gun. Stopping within a step or two of the car, with a "real angry look on his face," appellant told Audrey, "Merry Christmas, you stupid bitch" and shot her in the arm with a .410 shotgun. Audrey testified that appellant held the shotgun "like

2

it was pointing in [her] face," but Audrey threw her arm up and fell back in the seat, as she told appellant "no." Audrey "blanked out," but when she got up she saw appellant returning to the garage and picking up more shotgun shells. She exited the car and ran to a neighbor's house across the street. Appellant, armed with the shotgun, ran after Audrey as she screamed for help. A male neighbor, who witnessed Audrey coming toward his house, testified that she had "a lot of blood" running down her arm and was screaming hysterically, "He shot me, he shot me!"

Sometime after Audrey found shelter at the neighbor's house, appellant, still armed with the shotgun, went after Luciana. Seeing him return, Luciana slammed the door, locked it, and ran out the back door. Appellant chased her around the backyard and, as she paused to jump over a fence, Luciana glanced back and saw him doing something with the shotgun. She was not sure whether he was "cocking" the shotgun when she saw him, but as she went over the fence, she heard a shot fired.

The same neighbor who had seen Audrey running to his house now watched Luciana do the same. He also observed appellant across the street "scrambling to get more shells to reload the gun." The neighbor yelled to Luciana to hurry because appellant was reloading. The neighbor's wife, who is a certified medical assistant, was getting medical supplies from her garage when she saw appellant approaching with the shotgun. She told appellant, "K.J., you don't want to do this." He yelled for her to get out of his way and that he was "going to kill LaShawn." The male neighbor stood by his garage door and yelled to appellant, "You're not coming in my house with that gun, my son's in this house." Appellant left their property. He started to place the shotgun in the back seat of his car but instead he dropped the shotgun in his front yard and drove away.

3

Because Luciana signed a voluntary affidavit of non-prosecution, the jury considered only the allegation in the first count of the indictment concerning appellant's aggravated assault of Audrey. At the conclusion of the jury trial, the trial court refused appellant's request for a charge on deadly conduct, which appellant argued was a lesser-included offense of aggravated assault. The court also refused to allow appellant to impeach Audrey with her misdemeanor conviction for failure to identify. But the court admitted the State's evidence that Luciana had asked one of her neighbors not to testify against appellant. The jury found appellant guilty of aggravated assault with a deadly weapon.

## ANALYSIS

**Requested Instruction on Deadly Conduct**

Appellant's first point of error is that the court erred by refusing to instruct the jury on a lesser-included offense. *See* Tex. Code Crim. Proc. art. 37.08 (West 1981). A lesser-included offense is one that

(1)  is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2)  differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3)  differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4)  consists of an attempt to commit the offense charged or an otherwise included offense.

4

*Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005) (citing Tex. Code Crim. Proc. art. 37.09 (West 1981)). Specifically, appellant argues that deadly conduct is a lesser-included offense of aggravated assault and that he was entitled to a charge of deadly conduct under "both or either" the misdemeanor version in section 22.05(a) or the third degree felony version in section 22.05(b)(1). *See* Tex. Pen. Code Ann. § 22.05(a), (b)(1), (e) (West 2004-05).

A two-prong test applies when assessing whether a charge on a lesser-included offense should have been given. *Pickens v. State*, 165 S.W.3d 675, 679 (Tex Crim. App. 2005). The test requires that (i) the lesser-included offense be included within the proof necessary to establish the offense charged; and (ii) some evidence exists in the record that, if the defendant is guilty, he is guilty only of the lesser offense. *Id*. (citing *Hampton v. State*, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)).

To establish the offense of assault, the State must prove that the accused intentionally, knowingly, or recklessly caused bodily injury to another. Tex. Pen. Code Ann. § 22.01(a). The offense of "aggravated" assault requires proof that the accused used or exhibited a deadly weapon during the commission of the assault. *Id*. § 22.02(a)(2) (West 2003).

To establish the offense of deadly conduct, the State must prove that the accused (a) recklessly engaged in conduct that placed another in imminent danger of serious bodily injury or (b) knowingly discharged a firearm at or in the direction of one or more individuals. *Id*. § 22.05(a), (b)(1). One who engages in deadly conduct recklessly commits a class A misdemeanor, while one who engages in deadly conduct knowingly commits a third degree felony. *Id*. § 22.05(e).

5

Appellant relies on Audrey's testimony that she was "not afraid" as he approached the car and that the gun "went off" as evidence that "calls into question the intentionality of [his] act" and entitles him to a misdemeanor charge of deadly conduct. *See id*. § 22.05(a), (e).  He also argues that his act of firing a gun "at or in the direction of an individual" entitled him to a felony charge of deadly conduct*.  See id*. § 22.05(b)(1), (e).  The State contends that appellant was not entitled to a charge of either form of deadly conduct because there was no evidence that he was guilty *only* of that offense. *Pickens*, 165 S.W.3d at 679.

We must evaluate appellant's argument in the context of the entire record, considering the offense charged and the facts proven in this case. *Campbell v. State*, 149 S.W.3d 149, 154 (Tex. Crim. App. 2004).  Based on Audrey's testimony that the gun "went off" and that she was not afraid initially, appellant argues that his act of shooting her was not volitional.  This is not an argument supporting an instruction on a lesser-included offense; rather, it is an argument that he was not guilty of any offense at all. *See* Tex. Pen. Code § 6.01(a) (West 2003).  Entitlement to a charge on a lesser-included offense depends on evidence that the defendant is not guilty of the greater offense but is only guilty of the lesser. *Pickens*, 165 S.W.3d at 679.  If the evidence at trial proved that appellant never shot Audrey, he could have been guilty only of deadly conduct.

But appellant did shoot Audrey.  The trial testimony revealed that appellant loaded the shotgun, approached Audrey with an angry look, told her "Merry Christmas, you stupid bitch," aimed the gun "like it was pointing in [her] face," and shot her, leaving a hole that was the size of a "little orange" in her arm.  He returned to his garage, reloaded, and chased her across the street as he held the shotgun.  Other portions of the record contain Audrey's declarations that appellant

6

"shot" her. Because appellant shot Audrey he could not be charged with deadly conduct under section 22.05, even if the evidence supported his argument that he did not intend to seriously injure her when he recklessly discharged the shotgun in her direction and placed her in imminent danger of bodily injury. Appellant did not merely place Audrey in "imminent danger of serious bodily injury," or "discharge a firearm in her direction," he actually caused her serious bodily injury by shooting her. Here, the only time appellant engaged in deadly conduct was in the moments that preceded his commission of the aggravated assault. The fact that he shot Audrey precludes an instruction on either form of deadly conduct in section 22.05 because he could not have been guilty of only that offense. *See id.*

There is no evidence establishing deadly conduct as a valid alternative to the charged offense of aggravated assault. *See Hampton*, 109 S.W.3d at 440. Because there is no evidence that would support an acquittal on the aggravated assault charge and a conviction on a deadly conduct charge, the trial court did not err in refusing to instruct the jury on either form of deadly conduct under section 22.05. We overrule appellant's first point of error.

**Impeachment with Conviction for Failure to Identify**

In his second point of error, appellant contends that the trial court erred in refusing to allow him to impeach Audrey with her misdemeanor conviction for failure to identify. The trial court has discretion to decide the admissibility of evidence and, absent an abuse of discretion, its rulings will not be overturned. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 2000)). Thus, an appellate court

should affirm the trial court's evidentiary ruling if it was within the zone of reasonable disagreement. *Id.*

Texas Rule of Evidence 609 permits the credibility of a witness to be attacked with evidence of the witness's conviction for a felony or crime involving moral turpitude. Tex. R. Evid. 609(a). The rule allows the court to decide whether the evidence should be admitted after it balances the probative value of the evidence against its prejudicial effect. *See id.* Offenses involving "dishonesty or false statement" are crimes involving moral turpitude. *Dallas County Bail Bond Bd. v. Mason*, 773 S.W.2d 586, 589 (Tex. App.—Dallas 1989, no writ).

Appellant argues that Audrey's conviction for failure to identify was a crime of moral turpitude that was admissible to attack her credibility. One commits the offense of failure to identify by either (i) intentionally refusing to give one's name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information or (ii) by intentionally giving a false or fictitious name, residence address, or date of birth to a peace officer who has lawfully arrested the person; lawfully detained the person; or requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense. Tex. Pen. Code Ann. § 38.02(a)-(b) (West 2003). The offense of failure to identify by intentionally giving a false or fictitious name to a peace officer is an offense involving moral turpitude. *See Lape v. State*, 893 S.W.2d 949, 958 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). But the offense of failure to identify by refusing to give the requested information to a peace officer is not a crime of moral turpitude. Additionally, neither form of failure to identify is a felony. Tex. Pen. Code Ann. § 38.02(c)-(d).

Outside the jury's presence, appellant's counsel presented the court with a printout of Audrey Forcey's criminal history that appeared to show her conviction for "FAILURE TO IDENTIFY ENH."[1] But nothing in the printout showed that her conviction was under section 38.02(b), which involves lying to a peace officer. *See id.* § 38.02(b). Appellant failed to meet his burden of proving that Audrey's conviction for failure to identify was either a felony or a crime of moral turpitude. Moreover, because Audrey testified that she had been convicted for misdemeanor theft—an offense that did involve moral turpitude—any error in excluding the misdemeanor offense of failure to identify was harmless. Thus, we conclude that the trial court did not abuse its discretion in excluding the evidence of Audrey's conviction for failure to identify. We overrule appellant's second point of error.

**Admission of State's Evidence Attacking Witness's Credibility**

Appellant's final point of error is that the trial court should not have admitted the statement that a State's witness attributed to Luciana regarding her request that the witness not testify against appellant because this statement constituted improper impeachment of her credibility. He argues that the evidence was more prejudicial than probative under rule 403, that it violated rule 608(b) because it referenced a specific instance of Luciana's conduct, and that it lacked a proper foundation for impeachment under rule 613(b) because Luciana was not given an opportunity to explain or deny the circumstances or the statement. *See* Tex. R. Evid. 403, 608(b), 613(b).

---

[1] While there is another entry on the printout that lists "FAIL TO IDENTIFY FUGITIVE FROM JUSTICE," an entry beneath that offense states "PROSECUTOR ACTION: CHARGE CHANGED/CORRECTED," suggesting that the offense may have been listed erroneously.

Specifically, appellant contends that the court should have excluded the following witness's testimony:

Q. [by Prosecutor]   Jacob, did someone ask you not to testify in this case?

A.          Yes, sir.

Q.          Who was that?

A.          The victim's sister, the lady who was shot['s] sister.

Q.          Do you know where that woman was living back on May 26, 2003?

A.          I believe she was living in the house that she was shot in front of.

Q.          Okay.  Now you're talking about the sister of the woman who was shot?

A.          Yes, sir.

Appellant argues that the witness's statement about Luciana was more prejudicial than probative.  *See* Tex. R. Evid. 403.  Rule 403 states that even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.  *Id.*  The court determined that the witness's statement about Luciana "couldn't be more relevant as to whether or not [Luciana] had a motive to fabricate."  The trial court has discretion to decide the admissibility of evidence, and we find its evidentiary ruling was within the zone of reasonable disagreement.  *Moses*, 105 S.W.3d at 627.

Rule 613(b) allows impeachment of witnesses by proof of circumstances or statements showing bias or interest on the part of the witness. Tex. R. Evid. 613(b). In *Dixon v. State*, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999) (op. on reh'g), the court of criminal appeals held that rule 608(b) is not violated when the evidence is admitted to establish a witness's bias or interest. Because the witness's testimony about Luciana's request was probative of her bias toward appellant, it was admissible. The evidence was not offered to prove Luciana's general character for truthfulness under rule 608(b), but rather, under rule 613(b), her favor toward this particular appellant in this particular case for reasons unrelated to the merits of the case. *See id.*

The State concedes that the jury received the challenged testimony before Luciana testified; thus, she was not confronted with her statement or allowed to explain or deny the circumstances or the statement as required by rule 613(b). *See* Tex. R. Evid. 403. But the error, if any, of admitting this statement was harmless. The jury received evidence of Luciana's bias, independent of the challenged statement, from her own testimony:

Q. [by Prosecutor]  You're not at all happy about having to be here today, correct?

A.  No, I'm not.

Q.  In fact, to be fair, the only reason you're here is because you've been subpoenaed to attend court?

A.  That is correct.

Q.  You and I have met once before and spoken about this case very briefly, correct?

A.  We spoke over the phone. I haven't met you personally, no.

Q.          Okay. And you indicated to me that you wanted nothing to do
            with this trial?

A.          That's correct.

Furthermore, when questioned by appellant's trial attorney, Luciana testified that she had voluntarily executed a non-prosecution affidavit.

Appellant asserts that he was harmed by the admission of evidence that "impermissibl[y] impeach[ed]" Luciana's credibility because her testimony was critical to his defense. At trial, however, appellant claimed that the most significant testimony was Audrey's:

> They've put on a lot of evidence, but if you want to know the truth, this whole case is the testimony of Audrey Forcey. She's the only one who can testify about the shooting. No one else saw it. You have no other evidence. . . . I will submit to you that her feelings of hatred toward this man all lead—should lead to the question of the credibility and should create a doubt in your mind that she told the whole truth. Something else happened out there. . . . This is the whole case. The whole case is the testimony of Audrey and the gun.

Appellant claims that Luciana's testimony "contradicted some portions of [Audrey's] testimony," but he never identifies the conflicting evidence or explains its significance. Luciana did testify about the poor relationship between appellant and Audrey, and that, about four years before this shooting incident, Audrey had vandalized appellant's car. But Audrey testified that she broke the windows of appellant's car with a baseball bat, that she was placed on misdemeanor probation, and that she was prohibited from having any contact with her sister or appellant as a result of that behavior. Audrey further acknowledged to the jury that she violated this "no-contact" condition of her probation on the day of the incident.

12

With regard to the essential facts of appellant's offense, Luciana could not contradict Audrey's testimony, nor could she support appellant's vague argument that "something else happened out there" that day because Audrey was the only person who saw appellant fire the shotgun. We conclude the trial court did not abuse its discretion in admitting the State's evidence. Accordingly, we overrule appellant's final point of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:  October 20, 2005

Do Not Publish